James H. NEAL, Appellant,

v.

DISTRICT OF COLUMBIA and John Lattimore, Appellees.

No. 96–7187.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 9, 1997.

Decided Dec. 16, 1997.

Rehearing Denied Feb. 9, 1998.

Daniel M. Schember, Washington, DC, argued the causes and filed the briefs for appellant. Alake Johnson–Ford entered an appearance.

Mary L. Wilson, Assistant Corporation Counsel, Washington, DC, argued the cause for the District of Columbia, with whom Jo Anne Robinson, Interim Corporation Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corporation Counsel, were on the brief.

Jonathan J. Frankel, Washington, DC, argued the cause for amicus curiae American Civil Liberties Union of the National Capital Area, with whom Stephen H. Sachs and Arthur B. Spitzer were on the brief.

Before: WALD, HENDERSON and GARLAND, Circuit Judges.

Opinion for the Court filed by Circuit Judge WALD.

WALD, Circuit Judge:

This is a companion case to *Brown v. Plaut*, 131 F.3d 163 (D.C.Cir. 1997). Because our opinion in *Brown* addresses many of the same issues raised in this case, we will make frequent reference to that opinion.

Plaintiff James H. Neal ("Neal") was an inmate at the District of Columbia's (the "District's") prison at Lorton during all times relevant to this action. He seeks to recover damages from the District for holding him against his wishes and without due process in "voluntary protective custody," a regime of specially restricted custody for prisoners whose personal safety is in danger, for a period of six months. The district court dismissed Neal's action for reasons which we find are not persuasive; the District argues nonetheless this dismissal should be affirmed. We find that, under the analysis mandated by *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995),

Neal had no liberty interest in remaining free of the special conditions of detention imposed upon him, and therefore affirm the dismissal.

## I. BACKGROUND

Neal was convicted in 1987 in D.C. Superior Court of a number of offenses, including multiple counts of robbery, and sentenced to 49 to 147 years' imprisonment. He was initially placed at Lorton, then transferred to the federal prison in Leavenworth, Kansas, and later transferred back to Lorton in March 1992. The federal Bureau of Prisons transfer forms stated that Neal had a significant history of violence (he had allegedly tried to choke a prison guard) and that he should be considered an escape risk based on the length of his sentence. Accordingly, Neal was placed at Lorton's Maximum Security Facility, a decision that Neal says in a declaration filed in this action that he did not oppose. On March 31, 1992, at his initial hearing for housing classification at the Maximum Security Facility, Neal asked to be placed in voluntary protective custody to allow him to "become acquainted with the conditions and routine" at the facility. Prison officials obliged, and placed him in voluntary protective custody in Cellblock 1 of the Maximum Security Facility.

Voluntary protective custody is one species of administrative segregation; the other major category is involuntary protective custody, which is reserved for prisoners who present an escape risk or who pose a danger to themselves or others. D.C. Mun. Regs. tit. 28, §§ 521.4, 521.10, 521.11 (1987).[1] Prison regulations require that all placements in administrative segregation be reviewed every thirty days. *Id.*, § 527.1. Neal was scheduled for a review of his housing placement on April 30. When that review did not occur, and no other review was scheduled, he submitted written requests for a review in October and November 1992. On December 1, 1992, he submitted a written request for

---

**1.** Administrative segregation may also be used to hold an inmate prior to a housing hearing or adjustment hearing. *Id.*, § 521.2.

"placement in general population." On March 24, 1993, the Classification Board, charged with reviewing prisoners' custody levels, recommended that Neal be moved to medium security custody, but, for reasons unknown, this recommendation was never implemented. Neal wrote letters on March 29 and April 11, 1993, complaining that he had not received appropriate reviews of his placement in protective custody, and asserting that he wished to be moved to the general population at the Maximum Security Facility. On June 21, 1993, Neal was stabbed, and removed from the prison to an outside hospital. On his return to the prison, Neal voluntarily entered protective custody for a time, and then was returned to the general population of the Maximum Security Facility.

Neal filed a pro se complaint on July 14, 1994, claiming that the District's failure to release him from protective custody for six months violated the Due Process Clause and the D.C. regulations. (These regulations are referred to by the parties by the name of the statute approving them, the Lorton Regulations Approval Act ("LRAA").) The District filed a motion to dismiss or in the alternative for summary judgment on a number of grounds, one of which was that the LRAA did not create a private right of action. The district court denied the motion on all counts. It noted, however, that the question of whether the LRAA created a private right of action was a complex one, and requested further briefing.

While Neal's case was pending, the Supreme Court decided *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), finding that state laws and regulations governing prisons may only create a liberty interest for due process purposes if the alleged deprivation constitutes "atypical and significant hardship." *Id.* at 484, 115 S.Ct. at 2300. The parties filed supplemental pleadings as to *Sandin*'s application to Neal's case, and the district court found that, on the basis of a comparison between conditions in protective custody and those in the general population at the Maximum Security Facility, the conditions Neal had experienced in protective custody did amount to an atypical and significant hardship.

The district court then issued a memorandum deciding the LRAA question. It concluded that the question of whether the LRAA gives rise to a private cause of action was "complex" and that no court to date had awarded damages based on an LRAA violation. The district court stated that Neal had conceded that, absent the LRAA, he would not be able to bring a section 1983 action. It then found that comity dictated that the District of Columbia's courts be allowed to decide whether the LRAA creates a private right of action in the first instance, and dismissed Neal's entire suit. *See Neal v. District of Columbia*, 931 F.Supp. 16, 17 (D.D.C. 1996). Neal appeals from this order.

## II. ANALYSIS

On appeal, the District presents a number of arguments for affirming the district court's decision to dismiss Neal's section 1983 action. The most serious is that, under *Sandin*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), Neal did not have a liberty interest in avoiding his placement in administrative segregation. Because we agree with this one, we do not reach the others.

Before addressing *Sandin*, however, we briefly discuss the reasons given by the district court for its decision. The district court apparently assumed that, if a state law does not create a private cause of action, then it cannot support an action under section 1983. But to bring an action under section 1983 for a violation of the Due Process Clause, Neal need only establish that he has been deprived of a protected interest (here, a liberty interest) without due process. Under the law as it stood before *Sandin* was decided, Neal could have demonstrated this by showing that the relevant state laws and regulations sufficiently constrained the discretion of state officials to establish the existence of a liberty interest. *See Brown*, 131 F.3d at 169. Since *Sandin*, Neal must show that he has been subjected to an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin*,

515 U.S. at 484, 115 S.Ct. at 2300.[2] At neither time, however, did the test for the existence of a liberty interest turn on whether the relevant state laws create a private cause of action.

■ We now turn to *Sandin*. In the companion *Brown* case, we concluded that the application of *Sandin* raised difficult questions which we thought it unnecessary to answer. In this case, we need not reach those questions, as Neal cannot establish the existence of a liberty interest under any plausible reading of *Sandin*.

Neal avers that he involuntarily spent six months in "voluntary" protective custody, beginning at the point he asked in writing on December 1, 1992, to leave voluntary protective custody, and ending when he left the administrative segregation unit on June 21, 1993, for the hospital.[3] In Cellblock 1, where Neal was held during that period, he was allowed to leave his cell for nine hours a day three days a week, for six and a half hours (or longer if he had a visitor) for two days a week, and for five and six hours respectively on the remaining two days. He was allowed a total of eight hours a week outdoors, in a small courtyard. He did not have easy access to the gym, mailroom, law library, or medical unit (although other arrangements were made for provision of these services), and he could not work at a prison job.

Neal contends that the appropriate standard for determining whether the deprivation he suffered was "atypical and significant" is to compare his circumstances to those of the general prison population from which he was removed. *Cf. Brown*, 131 F.3d

at 169–70. Even by that standard, however, Neal fails to meet the *Sandin* test. Had he remained a part of the general population at the Maximum Security Facility, Neal would have received at least 14½ hours a day of out-of-cell time, and 17½ hours on Fridays and Saturdays. He would have been allowed 14 hours a week outdoors, some 22 hours a week of work, and easy access to the gym, mailroom, law library, and medical unit. His placement in administrative segregation thus cost him approximately half of his out-of-cell time, eliminated his access to employment, and restricted his access to prison facilities, all over a six-month period. This deprivation is comparable to that at issue in *Sandin*; although the deprivation in *Sandin* lasted only thirty days, it was considerably more severe, involving (for instance) a reduction from between eight and twelve hours a day of out-of-cell time to fifty minutes. *Sandin*, 515 U.S. at 486 & n. 8, 115 S.Ct. at 2301 & n. 8. It follows that, even under the reading of *Sandin* he himself proposes, Neal had no liberty interest in avoiding his treatment at the hands of Lorton's authorities, and so has no claim under the Due Process Clause. We therefore affirm the dismissal of Neal's due process claim.[4]

There remains Neal's claim under the LRAA. Although it is unclear on what basis the district court originally dismissed this claim, Neal concedes that, if the district court's dismissal of his section 1983 claim was proper, it would also have been proper for the district court to dismiss his claim under D.C. law for lack of jurisdiction. *See* 28 U.S.C. § 1367(c)(3).[5] We thus affirm the district court's dismissal of this claim.

---

**2.** As we note in *Brown,* after *Sandin* Neal might still need also to show that relevant state laws and regulations contain language constraining the discretion of state officials. *See Brown,* 131 F.3d at 170.

**3.** The LRAA states that a prisoner in voluntary protective custody who makes a written request to leave that status "shall be released at once from protective custody." D.C. Mun. Regs. tit. 28, § 521.12 (1987). The LRAA permits an inmate who asks to leave voluntary protective custody to be placed instead in involuntary protective custody if findings are made that the inmate is a danger to himself or others or presents an escape risk. *See id.,* §§ 521.4, 521.12. The Dis-

trict does not contend that any such findings were made.

**4.** Although we find that the District's alleged treatment of Neal does not rise to the level of a violation of the Constitution, that does not mean that we endorse it. We do not know from the record whether the District had any valid reason for keeping Neal for six months in "voluntary" protective custody against his will, and why it denied him any process at all.

**5.** Neal may, of course, pursue his LRAA claim in the courts of the District of Columbia. Dismissals for lack of supplemental jurisdiction are without prejudice, and the limitations period for a

The decision of the district court is therefore affirmed.

*So ordered.*

claim dismissed for this reason is tolled "while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period." 28 U.S.C. § 1367(d).